IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID WEINBERG,<br><br>                Plaintiff,<br>    v.<br><br>INTEREP CORP., and LONNY ANGER,<br><br>                Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil No. 05-5458(JBS)<br><br>**OPINION** |

APPEARANCES:

Michael J. Needleman, Esq.
CHARTWELL LAW OFFICES
2 Penn Center
1500 JFK Boulevard
Suite 222
Philadelphia, PA 19102
    Attorney for Plaintiff

David B. Lichtenberg, Esq.
JACKSON LEWIS LLP
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, NJ 07960
    and
Israel E. Kornstein, Esq.
SALANS
620 Fifth Avenue
New York, NY 10020
    Attorneys for Defendants

**SIMANDLE, District Judge**:

    About eight months after executing and certifying a separation agreement with his employer releasing all claims arising from his employment under any federal, state, or local anti-discrimination statutes and laws, Plaintiff David Weinberg filed a Complaint with the Superior Court of New Jersey, Law

Division, Camden County in September 2005 alleging that he was terminated on the basis of his age in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-12(a), and the state's public policy prohibiting discrimination in employment on the basis of age.  (Compl. ¶¶ 21, 25.)  On November 18, 2005, Defendants Interep Corporation ("Interep") and Lonny Anger ("Anger") (collectively, the "Defendants") removed the case to this Court.  This matter is presently before the Court on Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, to grant summary judgment pursuant to Fed. R. Civ. P. 56(c).

Defendants assert that Plaintiff knowingly and voluntarily entered into a valid separation agreement and accepted separation benefits in exchange for a release barring Plaintiff from alleging claims of age discrimination.  Defendants also argue that Plaintiff, as a Pennsylvania employee of Interep, cannot assert claims under New Jersey employment law, in any event.  For the reasons discussed herein, this Court will grant Defendants' motion for summary judgment.  This Court has diversity jurisdiction under 28 U.S.C. § 1332.

**I.   BACKGROUND**

The facts alleged in the Complaint are limited, but are as follows.[1]  In July 2002, Plaintiff began employment with Interep as a media and advertising sales person.  (Compl. ¶ 6.)  Defendant Anger was employed as Vice President, Director of National Sales, with Interep, and was Plaintiff's superior.  (Compl. ¶ 8; Affidavit of Lonny Anger ¶ 1.)  On January 7, 2005, Plaintiff attended a meeting at Interep's principal place of business in New York where he was terminated.  (Compl. ¶¶ 14-16.)  At the termination meeting, Plaintiff was presented with a separation agreement and release (the "Agreement," attached as Ex. A to Aff. of Lonny Anger), the terms of which offered Plaintiff severance and medical benefits as consideration for Plaintiff agreeing to release Defendants from claims arising from Plaintiff's employment, "including any anti-discrimination or equal employment opportunity claims."  (Agreement.)  Three days

---

[1] In deciding a Rule 12(b)(6) motion, the applicable standard is whether the plaintiff has alleged facts that would constitute a legal claim.  The Court must accept as true all of the facts pleaded in a complaint, as well as all reasonable inferences from those matters.  See Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  Upon conversion of the motion to one for summary judgment, however, Plaintiff, as the party opposing summary judgment, cannot rest upon his pleadings but must come forward with admissible evidence supporting all contested allegations, as required by Rule 56(c).  Plaintiff has generally failed to do so, proffering instead only a sketchy affidavit.  Nonetheless, the Court will recite Plaintiff's factual allegations as if contained in affidavits or other evidentiary equivalents.

later, on January 10, 2005, Plaintiff executed the Agreement. (Id.)  Under the terms of the Agreement, Plaintiff received five weeks of base severance pay and medical benefits paid by Interep through April 30, 2005.  (Id.)

In September of 2005, Plaintiff filed the Complaint alleging that he was terminated from his employment on the basis of his age in violation of N.J.S.A. § 10:5-12(a) (Count I) and public policy of the State of New Jersey, which prohibits discrimination in employment on the basis of age (Count II).  (Compl. ¶¶ 21, 25.)  Defendants removed the matter to this Court and filed the current motion to dismiss under Rule 12(b)(6), and alternatively, for summary judgment.

**II. DISCUSSION**

    **A.    Motion to Dismiss Standard of Review; Conversion to Motion for Summary Judgment**

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A district court must accept any and all reasonable inferences derived from those facts.  See Unger v. Nat'l Residents Matching Program v. Exxon Co., U.S.A., 928 F.2d 1392, 1394-95 (3d Cir. 1991).  Further, the court must view all allegations in the Complaint in the light most favorable to the plaintiff.  See Scheuer, 416 U.S. at 236;

4

<u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).

In the present case, both sides have referred to factual matters outside the pleadings, stated in the Affidavit of Plaintiff and in the Affidavit of Lonny Anger, which also attaches a copy of the Agreement. To the extent that this Court relies upon matters outside the pleadings, the Rule 12(b)(6) motion is converted to a motion for summary judgment under Rule 56(c), as provided in the final sentence of Rule 12(b) itself. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(c). <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986). In this case, as explained below, the Court refers to factual matters outside the pleadings to determine the circumstances of Plaintiff's employment and surrounding his execution, ratification, and receipt of severance pay and benefits under the Agreement.

**B.    Analysis**

    **1.    Whether the Agreement was Valid and Precludes Plaintiff's Claims of Age Discrimination in Employment**

It is beyond dispute, for reasons now discussed, that dismissal is appropriate because Plaintiff knowingly and voluntarily executed the Agreement with Interep that precludes claims arising from his employment under the NJLAD or any other

5

anti-discrimination law, whether by statute or common law, for which he received the consideration of valuable severance benefits.

On January 7, 2005, Plaintiff attended a meeting at Interep's headquarters in New York where he was terminated. (Pl. Br. at 1.) At the termination meeting, Plaintiff received the proposed Agreement which stated, among other things, that Plaintiff was being offered five weeks of severance pay and medical benefits in exchange for his signature on the Agreement. (Agreement.) The Agreement further stated that it covered:

> "all claims arising from your employment, including any anti-discrimination or equal employment opportunity claims, including, but not limited to, any federal, state, local or administrative claims arising under the following (in each case as amended to date)...."

(Id.) The Agreement then listed sixteen anti-discrimination statutes by name, such as the Civil Rights Acts and the Age Discrimination in Employment Act, and also listed:

> (q) any other applicable federal, state, or local anti-discrimination or equal employment opportunity statutes or regulations; and
>
> (r) any claim, no matter how denominated or described, under the common law or any federal, state or local law, rule, regulation or executive order for wrongful discharge or termination, [or] unlawful discrimination....

(Id.) The language of the Agreement continued, stating that, by signing the agreement, Plaintiff acknowledges that:

> (a) you have been afforded at least twenty-one (21) days to review the terms of this Agreement;

6

>    (b) you have been encouraged to consult with an attorney of
>        your choice before signing this Agreement;
>    (c) you have carefully read and understand the terms of this
>        Agreement;
>    (d) you have signed this Agreement freely and voluntarily
>        and without duress or coercion and with full knowledge
>        and understanding of its significance and consequences
>        of the rights relinquished, surrendered, released and
>        discharged by this Agreement;
>    (e) in exchange for executing this Agreement and releasing
>        any and all claims under the Age Discrimination in
>        Employment Act, you are receiving consideration to
>        which you are not otherwise entitled and which you
>        would not otherwise receive....

(Id.)  Further, the Agreement stated that it could be revoked in writing at any time within seven days following the date of execution.  (Id.)  The Agreement released claims against Interep and its subsidiaries, affiliates and divisions and their officers, directors and employees,[2] among others.  (Id., Preamble.)

Plaintiff signed the Agreement on January 10, 2005, three days following the date of the termination meeting.  (Id.)  Interep paid Plaintiff severance and provided medical benefits according to the terms of the Agreement, and Plaintiff accepted the consideration, paid through April 30, 2005.  (Anger Aff. ¶¶ 7-8)  Nevertheless, eight months later, Plaintiff filed the current Complaint in September 2005, alleging wrongful termination on the basis of age in violation of New Jersey law.

---

[2] Thus, any claims against Defendant Anger arising from Plaintiff's employment were released to the same extent as claims against Interep itself, the analysis herein applies equally to both Defendants.

Plaintiff alleges that the Agreement is unenforceable because it (i) is invalid on its terms; and (ii) does not mention the NJLAD specifically and therefore does not bar a claim under that statute.  Neither claim by Plaintiff is plausible.

The parties agree that New Jersey law may be applied to determine the validity of the Agreement and release; neither party has suggested that application of Pennsylvania or New York law would lead to a different result.  The standard for determining the validity of a release is the totality of the circumstances.  See Mosley v. Bay Ship Mgmt., Inc., 174 F. Supp. 2d 192, 196 (D.N.J. 2000).  In Cirillo v. Arco Chem. Co., 862 F.2d 448, 451 (3d Cir. 1988), the Third Circuit established a list of factors to consider in evaluating the totality of the circumstances and those factors have been applied by this Court to determine the validity of a release of claims under the NJLAD.  See Mosley, 174 F. Supp. 2d at 197; Riddell v. Medical Inter-Ins. Exch., 18 F. Supp. 2d 468, 474 (D.N.J. 1998)  The factors to consider include (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or did in fact receive benefit of counsel; (6) whether there was an opportunity for negotiation

8

of the terms of the agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.  See Cirillo, 862 F.2d at 451.  In this case, the Cirillo factors strongly support a finding that the Agreement was valid and Plaintiff would be unable to show that, by the totality of the circumstances, Plaintiff was coerced to waive his right to bring the current claims.

In this case, the language in the Agreement is clear and specific.  The Agreement was under three pages long and clearly explains that severance and medical benefits, which Plaintiff was not otherwise entitled to receive, were being offered in exchange for a release from all claims relating to Plaintiff's employment.  (Agreement.)  The Agreement specifically states that it includes a release of all claims arising under state anti-discrimination statutes and any claims for wrongful termination or unlawful discrimination.  (Id.)

Plaintiff claims that the failure of the Agreement to expressly list the NJLAD by name precludes a finding that the terms of the Agreement bar such claims.  However, Plaintiff provides no authority indicating that the NJLAD must be specifically named in a release to be validly waived.  In fact, courts have consistently found a valid waiver where the NJLAD is not explicitly mentioned.  See Mosley, 174 F. Supp. 2d at 197

(finding that when plaintiff agreed to "drop his beef" against defendant, he knowingly and voluntarily waived his right to bring a discrimination claim under the NJLAD); <u>Swarts v. Sherwin-Williams Co.</u>, 244 N.J. Super 170, 179 (App. Div. 1990) (finding plaintiff knowingly and voluntarily waived his right to claim age discrimination under the NJLAD although not named in the waiver provision).  Under the clear language of the Agreement, Plaintiff knew or should have known that he was waiving his right to bring a claim for age discrimination, including under the NJLAD and New Jersey public policy.  Plaintiff's claim is all the more preposterous when the clear, all-embracing language of the release is considered.  As noted above, Plaintiff agreed to release:

> all claims arising from [his] employment, including any anti-discrimination or equal employment opportunity claims, including, but not limited to, any federal, state, local, or administrative claims arising under the following (in each case as amended to date):...(q) any other applicable federal, state, or local anti-discrimination or equal employment opportunity statutes or regulations; and (r) any claim, no matter how denominated or described, under the common law or any federal, state, or local law, rule, regulation, or executive order for wrongful discharge or termination, unlawful discrimination,...breach of promise or public policy, retaliation,....

(Agreement.)  It could not be more plain that Plaintiff's claims for age discrimination in employment under the NJLAD and New Jersey public policy are barred herein by the Agreement's plain terms.

Plaintiff also claims that he did not consult with counsel when reviewing the Agreement, supporting a finding that his waiver was invalid. (Pl.'s Br. at 5.)  Plaintiff, however, provides no facts indicating that he did not understand the Agreement or that he was prohibited from seeking the aid of counsel.  In fact, under the terms of the Agreement, Plaintiff had 21 days to review the agreement and was encouraged to consult with an attorney.  (Agreement ¶ 3(b).)  Additionally, Plaintiff had the option of revoking his signature within seven days after executing the Agreement.  (Id. ¶ 4.)  Plaintiff's signature on the Agreement is dated January 10, 2005 - three days after the termination meeting at which he was presented with the Agreement - suggesting that he did in fact review the terms before deciding to sign it.  Plaintiff never indicated a desire to revoke his signature on the Agreement, and he accepted the consideration provided under the terms of the Agreement for the subsequent months.  Plaintiff was encouraged to consult with an attorney and was provided adequate time to do so.  These timetables and procedures both encouraged and enabled him to consult with an attorney for up to 21 days before signing or even during the seven days after signing, and to revoke, if desired.   His decision not to take more time or to consult an attorney was his right, but in no way invalidates the Agreement.

Plaintiff lastly argues that the Agreement is invalid because he was forced to sign it under duress.  One asserting duress must establish a wrongful act or threat which prevented the party from exercising his free will and judgment.  <u>See</u> <u>Plechner v. Widener College</u>, 569 F.2d 1250, 1260 (3d Cir. 1977); <u>see</u> <u>also</u> Restatement (Second) of Contracts §§ 174-177.  Plaintiff claims that, because he was told that the subject matter of the January 7, 2005 meeting would be a possible relocation rather than his termination, Plaintiff felt compelled to sign the release and could not possibly have knowingly and voluntarily waived his statutory rights under the NJLAD.

Mr. Weinberg was not requested to sign the Agreement at the meeting.  Plaintiff has failed to present any facts demonstrating that he was subject to duress or undue influence.  Even assuming that Plaintiff's claim that he was "lured to New York under the impression he was there to discuss a possible relocation" is true, Plaintiff has failed to show that those "false pretenses" constituted a wrongful act or threat having any connection with his eventual decision to accept the Agreement's terms after learning of his termination.  He has alleged no facts to indicate that he was prevented from exercising his free will and judgment in considering and eventually signing the Agreement as a result of Defendants' behavior.  Conversely, Plaintiff refrained from signing the Agreement at the meeting and waited three days before

executing it. As noted, he could have waited as long as 21 days. He failed to exercise his right under the terms of the Agreement to withdraw his consent within seven days and subsequently accepted the severance pay and medical benefits provided as consideration for his signature on the Agreement. <u>See</u> <u>Mullen v. New Jersey Steel Corp.</u>, 733 F. Supp. 1534, 1548 (D.N.J. 1990) (stating that under traditional contract principles, even a release that is not valid when signed is subsequently ratified by the acceptance of the benefits under the contract). Upon these facts, Plaintiff can not demonstrate to a reasonable factfinder that the Agreement should be invalidated as a result of any duress or undue influence. That he had second thoughts or regrets months later is immaterial.

In this case, the totality of the circumstances indicates that Plaintiff knowingly and voluntarily waived his right to bring the current claim of discrimination under the NJLAD. No reasonable factfinder could reach a conclusion in Plaintiff's favor and Defendants are entitled to summary judgment as a matter of law.

### 2. Whether Plaintiff Can Assert a Claim Under New Jersey Law

Even if the Agreement did not bar Plaintiff's claims, they are not viable because New Jersey law does not apply to his

Pennsylvania employment, as now discussed.[3]  Count I of the Complaint alleges that Plaintiff was terminated on the basis of his age in violation of the NJLAD.  (Compl. ¶ 21.)  The NJLAD states that it shall be unlawful discrimination for an employer, because of the age of any individual, "to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age...."  N.J.S.A. § 10:5-12(a).  Plaintiff claims that he was wrongfully terminated from his employment with Interep on the basis of his age.

The first issue is whether, based on his place of employment, Plaintiff may even assert a claim under the NJLAD. Interep is a corporation organized under the laws of the state of New York and has its principal place of business in New York. (Compl. ¶ 2, Anger Aff. ¶¶ 2-5.)  Interep has never maintained an office in New Jersey.  (Id. ¶ 4.)  For the term of his

---

[3] Preliminarily, it is noted that Count II of the Complaint alleges that Plaintiff was terminated from his employment on the basis of his age in violation of the public policy of the State of New Jersey. (Compl. ¶ 25.)  Under New Jersey law, a claim of discrimination in violation of state public policy is preempted by the NJLAD, N.J.S.A. § 10:5-12(a), if the claim relies on the same allegations underlying a claim under the NJLAD and the NJLAD provides a remedy.  See Erickson v. Marsh & McClennan, Co., 117 N.J. 539, 561-62 (1990); see also Mardini v. Viking Freight, Inc., 92 F. Supp. 2d 378, 384 (D.N.J. 1999); Caldwell v. KFC Corp., 958 F. Supp. 962, 970 (D.N.J. 1997); DeJoy v. Comcast Cable Communications Inc., 941 F. Supp. 468, 475-76 (D.N.J. 1996).  In this case, Plaintiff provides no argument even attempting to show that his public policy claim is not preempted by his statutory claim.  Because the NJLAD preempts Plaintiff's New Jersey common law claim, Count II of the Complaint must be dismissed in its entirety pursuant to Rule 12(b)(6).

employment, Plaintiff worked as the director of sales in Interep's Philadelphia office. (Id. ¶ 2.) The January 2005 meeting at which Plaintiff was terminated and presented with the Agreement occurred at Interep's headquarters in New York. (Id. ¶ 5.) Plaintiff argues that he has sufficient connections to New Jersey to allow him to assert a claim under the NJLAD because (i) he is a New Jersey resident and (ii) he generated nearly $500,000 in sales with New Jersey clients while employed with Interep. (Compl. ¶ 1, Pl.'s Br. at 1.)

New Jersey courts have consistently applied the law of the state of employment to claims of workplace discrimination, and therefore only apply the NJLAD if the claimant was employed in New Jersey. See Satz v. Taipina, 2003 WL 22207205, at *18 (D.N.J. 2003) (plaintiff could not assert a claim under the NJLAD where defendants had offices in New Jersey, but plaintiff worked exclusively in Pennsylvania and Delaware); Brunner v. AlliedSignal, Inc., 198 F.R.D. 612, 613-14 (D.N.J. 2001) (the NJLAD does not apply to claims brought by a New Jersey resident against a New Jersey company when claimant was employed exclusively in Pennsylvania); Buccilli v. Timby, Brown & Timby, 283 N.J. Super 6, 10-11 (App. Div. 1995) (a New Jersey resident, employed in Pennsylvania, could not assert a claim under the NJLAD against a law firm even though it had offices in New Jersey). These courts reasoned that subjecting an employer to

different legal requirements because its employees reside in different states would be unfair.  See Satz 2003 WL at *16; Buccilli, 283 N.J. Super. at 12.  Therefore, Plaintiff's New Jersey residency is irrelevant to the issue of whether he can assert a discrimination claim under the NJLAD.  Plaintiff's claims relate to an allegedly wrongful termination that occurred in New York based on his employment in Pennsylvania, strongly suggesting that New Jersey law does not apply.

     However, Plaintiff additionally claims that he conducted a substantial amount of business on Interep's behalf with New Jersey clients, at times meeting at the clients' offices in New Jersey.  (Pl.'s Br. at 11, Weinberg Aff. ¶¶ 4-7.)  This fact may demonstrate a business connection between Plaintiff and New Jersey that is specifically pertinent to his claim.  See Satz 2003 WL at *17.  He does not allege that he maintained an authorized office at his home in New Jersey; instead, he was employed at Interep's Philadelphia, Pennsylvania office, where he was exclusively based.  (Anger Aff. ¶¶ 2-3.)  Plaintiff suggests that substantial sales with New Jersey clients could support a claim of employment discrimination under New Jersey law.  According to his affidavit, Plaintiff met "on several occasions" in New Jersey at two clients' offices in Moorestown and Princeton.  (Weinberg Aff. ¶¶ 4-7.)  However, Plaintiff cites no authority suggesting that the amount of business a claimant

16

conducts in the state is a factor in considering whether a claim can be asserted under the NJLAD;[4] even if this factor was germane, in this case, the sales generated by Plaintiff in New Jersey were not substantial.  In the first two years of his employment, Plaintiff allegedly generated nearly $11,000,000 in sales.  (Compl. ¶¶ 10, 12.)  During that time, sales to New Jersey clients constituted less than $500,000.  (Pl.'s Br. at 11.)  By the Court's calculation, sales to New Jersey clients therefore accounted for less than five percent of Plaintiff's total sales.  Contrary to Plaintiff's assertion, that amount does not constitute a substantial fraction of Plaintiff's business, nor does it transform his place of employment from Pennsylvania to his customers' locations in New Jersey.

Employment discrimination cases often straddle state lines and can involve several different states, including the state of the employee's residence, the state where the employee works, the state where the employer's headquarters is located, the state where the employer does business, and the state where the alleged discrimination occurred.  See Satz, 2003 WL at *16.  As with the fact of an employee's domicile, subjecting an employer to

---

[4] Plaintiff mistakenly cites only authority relating to issues of personal jurisdiction to support his argument that he can assert a claim under the NJLAD.  Neither party in this case is arguing whether this court has personal jurisdiction over the employer; rather the issue is what substantive law should apply.

different legal requirements based on an insubstantial fraction of business conducted by the claimant in the state would be unreasonable.  Looking to the state of employment ensures that the law in the jurisdiction with the strongest interest in the outcome of the litigation controls.  See Shamley v. ITT Corp., 869 F.2d 167, 171-72 (2d Cir. 1989).  In this case, Plaintiff was not employed in New Jersey; he was employed in Pennsylvania by a company having no New Jersey office, and less than five percent of his sales were to New Jersey clients.  Therefore, Plaintiff may not assert claims under the NJLAD and this court will grant Defendants' motion to dismiss.

**III. CONCLUSION**

For the foregoing reasons, this Court will convert Defendants' motion to dismiss to a motion for summary judgment and it shall be granted.

The accompanying Order is entered.


**April 26, 2006**　　　　　　　　　　**s/ Jerome B. Simandle**
Date　　　　　　　　　　　　　　　　JEROME B. SIMANDLE
　　　　　　　　　　　　　　　　　　United States District Judge